[Civ. No. 3635.  Third Appellate District.—December 27, 1928.]

CHARLES C. ISSENHUTH, Respondent, v. ROBERT MARSH & CO., INC. (a Corporation), Appellant.

Clyde C. Shoemaker for Appellant.

Norman T. Mason for Respondent.

TUTTLE, J., *pro tem.*—This is an action brought to rescind a contract for the purchase of a share in an "oil lease" and to recover the sum of $5,000 paid upon the same. Judgment went for plaintiff according to the prayer of the complaint, and from said judgment this appeal is taken.

The following facts are undisputed. On April 14, 1923, Gilbert & Hawley assigned to Reed & Campbell an interest in an oil lease covering two and one-half acres of land in the Santa Fe Springs district. By the terms of said instrument the assignees agreed to do certain development work in search of oil. Included in this work, the assignees were to continuously and diligently prosecute the drilling of a well to a depth of 5,000 feet or until production was obtained at a lesser depth in what is known as the "Meyer sand." Gilbert & Hawley then assigned two per cent of the royalty under said agreement to appellant Robert Marsh & Co., and the latter assigned one per cent of said royalty to plaintiff.

On May 15, 1923, respondent paid appellant the sum of $2,000 in cash, and received from it a writing as follows:

"May 15, 1923.

"Received from C. C. Issenhuth buying order covering 1% Gilbert Lease, Carter Tract, operating company Reed & Campbell, drilling contractor Roy Evans, Price $5,000.00. Robert Marsh & Co. Inc, Guaranteeing development of said properties and title pertaining to same. Terms $2000.00 cash, receipt of which is hereby acknowledged—balance on or before the 31st day of May.

"ROBERT MARSH & CO., INC.

"By C. A. BRIGGS, Mgr."

The balance of the purchase price, $3,000, was paid June 4, 1923, and on June 18, 1923, appellant executed to respondent an assignment of the one per cent royalty which he had agreed to purchase on May 15th.

The court found, upon sufficient evidence, certain facts to be true, and they are given in substance, as follows:

At the time of the purchase the oil-well had been drilled to about 2,000 or 3,000 feet; a month thereafter (June 7, 1923) it had reached the depth of 2,953 feet; on July 26, 1923, it had been sunk 940 feet deeper, that is, to a depth of 3,893 feet, which was the last development work done upon the property.

Thereafter the drilling contractor was engaged in a "fishing job," which was never completed, and since the middle of October, 1923, all efforts to resume development work ceased.

It was necessary, in order to complete a well in this field, to sink it to a depth of about 5,000 feet to the "Meyer sand," where oil at those times was found in commercial quantities.

The lease under the terms of which plaintiff's one per cent royalty was to be paid was forfeited by failure to do the development work therein required, viz., to prosecute drilling "diligently and continuously until it reached what is known as the 'Meyer sand,' being approximately 4,800 feet in depth"; "and further upon the completion of the first well and within sixty days thereafter to commence the drilling of a second well and diligently prosecute the same to completion as above provided for the first well, and within sixty days thereafter a third well shall be commenced and drilled to completion as above provided, and within sixty days after

its completion, a fourth well shall be commenced and drilled to completion as above provided."

When respondent made the first payment of $2,000 to appellant it will be noted that he received from it a writing duly signed and which we have quoted in full *supra*. This writing contained the clause "guaranteeing developing of said properties." At the time of the execution of the said instrument containing said "guarantee," respondent also signed a "buying order," which reads as follows:

"Robert Marsh & Co., Inc. May 15, 1923
Stocks Bonds
Realtors
200 Marsh-Strong Bldg.,
Los Angeles, Cal.
buy

"I hereby authorize you to ~~sell for my account and risk in open market or by private purchase~~ 1% Gilbert Lease, Carter Tract, operating company Reed & Campbell drilling contractor Roy Evans Drilling Company—price—$5,000.00 Terms $2,000.00 cash, balance on or before May 31, 1923. Subject to confirmation Signed C. C. Issenhuth
Make checks payable to
Robert Marsh & Co., Inc. Address

"The face of this subscription contains all the terms and agreement between the undersigned and Robert Marsh & Co., Inc. This agreement subject to confirmation by Robert Marsh & Co., Inc."

When the final payment of $3,000 was made, appellant executed to respondent a formal assignment of one per cent of the gross production from all oil, gas, and other hydrocarbon substances produced and saved as reserved in a certain gas and oil lease between the parties in the manner we have explained. No mention of any guaranty was made in this assignment.

■ It is contended by appellant that the instrument containing the guaranty was distinct and separable from the sale; that it was a collateral agreement and a separate undertaking, and that a breach of the same would not authorize a rescission of the entire transaction. We do not take this view of the matter. The first instrument executed by the parties was the only contract between them. Upon that date respondent became obligated to pay the sum of $5,000, and,

in return, appellant was bound to convey the royalty interest. The subsequent execution of the assignment conveying said interest was an act done in pursuance of the carrying out of said contract. The same applies to the "buying order." It is not contended by appellant that the first contract was incomplete or that it did not express all the terms necessary to complete the transaction, or that there is any inconsistency between these documents. We cannot see how the subsequent execution of the assignment could possibly operate to deprive respondent of a right which he had acquired under the contract, merely because they did not repeat or refer to the guaranty clause which appeared in the said contract. The contract was in its nature entire, and not severable. ▇ The fact that the consideration was payable in two installments does not make it otherwise. The consideration of $5,000 was single, and it must follow that the contract is entire. The contention that there was an apportionment of the consideration is contrary to the obvious intent of the parties, and is wholly without merit. (*Stern* v. *Sunset Road Oil Co.*, 47 Cal. App. 334 [190 Pac. 651].)

▇ It is next contended that the guaranty did not refer to development work which the assignors of appellant were obligated to perform under the various leases and assignments in evidence, and that the finding that the guaranty included the obligations assumed by appellant's assignors is not supported by the evidence. The answer to this is that the contract here referred particularly to the Gilbert Lease, and to Reed and Campbell who agreed to do certain development work upon the property covered by said lease. All of these leases and assignments were in evidence, and the court was justified in drawing the inference and finding that the guaranty referred to and covered the development which appellant's assignors were obligated to perform.

The court made the following finding: "The court is unable to determine from said receipt the nature or extent of the 'development of said properties' attempted to be so guaranteed, nor the time within which such development should be done."

Thereafter, the court found that the development work which the assignors of appellant had agreed to perform, had not been done, specifying the particulars. It is contended that these findings are so conflicting as to entitle

appellant to a reversal. ██ It is our duty to construe the finding in a manner to uphold, rather than to defeat the judgment. But it is scarcely necessary to invoke this rule here. ██ The court merely finds that from the contract *alone* it cannot determine the nature or extent of the development attempted to be guaranteed. This does not preclude the court from turning to the other evidence introduced, for the purpose of ascertaining these facts, and that is precisely what the court did. The nature and extent of the development referred to in the contract was found in the various leases and assignments before the court, which documents were referred to in the contract.

██ Appellant offered opinion evidence to the effect that if it had done the development work called for, no oil would have been found. The court excluded this testimony. This ruling was correct. It was no defense to the action to prove that full performance upon the part of appellant would have shown respondent's "investment" to be valueless. The latter had the right to full performance under his contract. It would, indeed, be a lax rule of law which would permit a promisor to exercise his own discretion as to the extent he should perform his part of an obligation. The question of damages is not raised, as respondent merely seeks rescission and return of his consideration, and that was the adjudication made.

It is contended that rescission was not made promptly, under section 1691 of the Civil Code. The court found on this matter adversely to appellant. We have examined the record and we are satisfied that the finding is amply supported.

The judgment is affirmed.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 26, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 25, 1929.

All the Justices present concurred.